# GEORGE C. LAUER STONE & CONSTRUCTION COMPANY v. ARMOUR & COMPANY.[1]

July 1, 1921.

No. 22,312.

**Increased rent demanded before termination of lease.**

    1. It is *held*, on the facts stated in the opinion, that the term of the lease under which defendant was occupying the premises in question had not been terminated by the act of the parties, or otherwise, at the time plaintiff made demand for increased rent as a condition to continued possession by defendant, and that the demand to that effect was without basis for its support and of no force or effect.

[1]Reported in 183 N. W. 819.

**Directed verdict for defendant proper.**

> 2. The evidence *held* insufficient to present an issue of fact for the jury, and that a verdict was properly directed for defendant.

Action in the district court for Ramsey county to recover $17,100. The facts will be found in the opinion. The case was tried before Dickson, J., who before the introduction of testimony denied defendant's motion to dismiss the action because the complaint was on an implied agreement to pay $100 a day when the action was clearly one on an express agreement, and at the close of the testimony, directed a verdict in favor of defendant. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Henry C. James,* for appellant.

*Davis, Severance & Morgan,* for respondent.

BROWN, C. J.

In the construction of buildings forming its packing plant in South St. Paul, defendant required, as necessary building material, large quantities of crushed rock for use in the concrete part of the work. Plaintiff was the owner of a stone quarry a few miles north of South St. Paul where the material could be had. Negotiations between the parties resulted on August 13, 1918, in a lease of the quarry with equipment to defendant for such time as might be necessary from the operation thereof to produce the material in the quantity required. In consideration of the grant defendant agreed to pay plaintiff: (1) Twelve and one-half cents per cubic yard for all stone removed; and (2) to loan plaintiff $10,000 to enable it to pay off and discharge certain liens and encumbrances which were a menace to plaintiff's title and future ownership of the quarry. Defendant thereafter entered into the possession of the property and continued the operation thereof until some date in June, 1919, when the work was temporarily suspended, being again resumed in the month of September following. Defendant fully complied with the terms of the contract by paying the stipulated compensation for the stone removed, and loaning to plaintiff the agreed sum of $10,000; there was no breach of the contract in either respect. During the period when work in the quarry was suspended, and on July 18, 1919, plaintiff pre-

pared and caused to be served upon defendant a notice, by which there was an attempt to terminate the leasehold rights of defendant, and, on the theory that they had in fact been terminated, notifying defendant that, if possession of the premises was not surrendered by July 23, defendant would be required to pay for the continued possession thereof the sum of $100 per day "for each day after said July 23, 1919, until you surrender" the same, in addition to the stipulated rate per cubic yard for the material thereafter removed. Defendant refused to recognize the notice, claiming that the term of the lease had not expired, and as heretofore stated resumed operations at the quarry in September, continuing the same until late in December, when work was again suspended, though the required quantity of material had not yet been obtained.

Thereafter, on January 10, 1920, plaintiff brought this action to recover the increased rent demanded by the notice just referred to, for the period from July 23 to the commencement of the action, alleging in the complaint that the term of the lease had expired prior to the date of the notice and that defendant's subsequent retention of the quarry was as a holdover tenant, and at the increased rent demanded. Defendant by answer joined issue upon the question whether the lease had terminated as claimed by plaintiff; also upon the further question whether the failure of defendant to surrender the premises in response to the notice exposed it to the greater liability demanded. At the close of the trial a verdict was directed for defendant on the ground that its leasehold rights had not expired by abandonment, consent of parties or otherwise, therefore that the notice to quit or pay more rent was unauthorized, hence ineffectual for any purpose. Plaintiff appealed from an order denying a new trial.

The action is founded on the theory that the term of the lease had expired at the time the notice to quit was served, and that, by thereafter retaining possession of the property and failing to return it to plaintiff, defendant by implication of law is deemed to have accepted the conditions imposed and therefore liable for the increased rent. If the theory that the leasehold term had ended at the date of the notice be sustained by the evidence, defendant's liability for the greater rent is clear. Gardner v. Board of Co. Commrs. of Dakota County, 21 Minn. 33; Moore

v. Harter, 67 Oh. St. 250, 65 N. E. 883; Williams v. Foss-Armstrong Hdwe. Co. 135 Wis. 280, 115 N. W. 803. But if the lease had not expired there was no basis for the notice to quit and it must fall as without force or effect.

We find from the record no evidence to justify the conclusion that the term of the lease had expired, either by lapse of time, by abandonment or by the failure of defendant promptly to prosecute the work in getting out and removing the material, nor evidence which would justify a submission of the question to a jury.

The lease provides in clear language that the term thereof should continue for such period as might be necessary to enable defendant, by the exercise of reasonable diligence, having due regard to economy in handling and using the same, to quarry, crush and ship the required quantity of material to the scene of the building operations. The undertaking in which defendant was engaged was an extensive one and large quantities of this class of material were necessary, to be used from time to time as the construction work progressed. Necessarily the parties contemplated that the time necessary for the purpose would be indefinite and extend over a considerable period. There was no unnecessary delay by defendant. The quarry was promptly taken over and no claim is made of unreasonable or other delay during the time the operations were under way. The suspension from June to September is not shown to have been unwarranted or unnecessary, and no conclusion of abandonment can be predicated thereon. Defendant was not required by the lease to continuously operate the quarry, and, under the liberal terms and provisions thereof, neither court nor jury could find that a failure to do so was a breach of the contract. Defendant had not at the date of the notice taken out enough material for its use, and the claim that some representative of the company had stated to plaintiff without qualification that defendant was through with the quarry is not sustained by the facts disclosed. There were some negotiations or attempted negotiations between the parties during the time work at the quarry was shut down looking to a possible relinquishment of rights under the lease. But nothing came of them and defendant resumed operations in September. In this state of the facts, of which the record leaves no room for fair doubt, defendant's rights under the lease had

not ended and the demand for higher rent was without right and must fall as of no force or effect. The Gardner case, supra, is not in point. In that case the term of the lease had expired, of which there was no dispute, and the tenant was holding over in the face of a demand for increased rent. Such is not the case at bar.

Order affirmed.